# United States Bankruptcy Court
# District of Massachusetts

|   |   |   |
|---|---|---|
| In re | ) | Chapter 7 |
|  | ) | Case No. 07-43302-HJB |
| FRED LABERGE, | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |

**SECOND AMENDED MEMORANDUM OF DECISION**

Before this Court is the necessity to determine, under 11 U.S.C. § 329,[1] the propriety of compensation received by Attorney Allan R. Curhan ("Attorney Curhan") for services rendered to Fred Laberge (the "Debtor"22) while representing the Debtor in or in connection

---

[1] 11 U.S.C. § 329 provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

with this case. For the reasons set forth below, all compensation to Attorney Curhan will be disallowed, and should be disgorged to the Debtor and his non-debtor spouse.

I.    FACTS AND PROCEDURAL HISTORY

On September 4, 2007, the Debtor filed a Chapter 7 case in this Court. He was then, and continues to be, represented by Attorney Curhan. The case first came to the Court's attention on the day that the case was filed. The petition was filed electronically through the Court's CM/ECF system, but somehow failed to produce an image. Whether the problem was operator or computer error, an amended petition was filed the next day. The schedules and other papers filed on the Debtor's behalf disclosed a somewhat garden-variety case. The Debtor and his non-debtor spouse owned a home with a fair amount of equity (approximately $100,000.00). The Debtor's personal property assets were modest. Both the home and the personal property, based on the values reported, were fully exempted on Schedule C, employing uncontrovertable state law exemptions. The Debtor easily passed the §707(b) "means test," raising no presumption of abuse. He did report significant debt to taxing authorities (estimated to be over $70,000.00), but they were not listed as being in dispute. Unsecured claims totaled over $500,000.00. These claims belonged to only a handful of creditors and appeared to arise primarily from a failed business enterprise. No other complexity was immediately apparent. Indeed, the Chapter 7 trustee less than three (3) months later informed the Court that there would be no distribution for unsecured creditors. And no party in interest objected to discharge or the dischargeability of any claim.

The Court did take notice, however, of the compensation disclosed on Attorney Curhan's Rule 2016(b) Statement[2] - a flat $6,000.00 charged and received prior to the filing of the petition. While that amount might, in a particular case, have been perfectly appropriate or even modest, the Court decided to inquire. On September 14, 2007, ten (10) days after the filing of the case, the Court issued an order to show cause why Attorney Curhan should not be required to file a fee application (the "Show Cause Order"). The Show Cause Order was set for hearing on October 16, 2007. Attorney Curhan responded somewhat differently than the Show Cause Order suggested. Rather than simply explaining why the circumstances would not justify the necessity of a fee application, Attorney Curhan opposed the Show Cause Order with a pleading (the "Response") which *purported* to persuade the Court not to require the filing of a fee application while providing virtually all of the information which would have been included in such an application. The Response contained a narrative of the case, Attorney Curhan's background and experience, the hourly rate charged by his firm, the writings comprising his fee agreement

---

[2] Federal Rule of Bankruptcy Procedure 2016(b) provides:

(b) Disclosure of Compensation Paid or Promised to Attorney for Debtor

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

with the Debtor and even a daily description of services rendered and by whom and calculated to the tenths of an hour. The recitation disclosed that Attorney Curhan had spent 33.4 hours (at $275.00 per hour) and his paralegal had spent an additional 27.5 hours (at $65.00 per hour) for a total of $10,972.50. Time was also listed for an attorney Ronald J. Weiss, not a member of Attorney Curhan's firm. His time added 13.4 hours at $3,015.00 for an additional sum of $3,015.00 - now a grand total of $13,987.50.

Two documents comprised the fee agreement with the Debtor. The first was a letter, dated June 7, 2007, approximately three (3) months prior to the filing of the petition. It recited the following, in relevant part:

> Dear Fred:
>
> We are required by the cannons [sic] of ethics to make the following disclosures:
>
> Shortly before May 30, last, you provided us with a check in the amount of $3,500.00 to cover filing fees and legal expenses associated with the filing of a voluntary petition in bankruptcy on your behalf. I have retained the services of Ronald J. Weiss, Esquire, 96 Court Street, Plymouth, Massacitions, to assist in this matter. Mr. Weiss specializes in the filing and prosecution of personal bankruptcies.
>
> The filing fee for a voluntary petition is $299.99.[3] The remainder of the fee will be divided between us depending on the work undertaken by each of us.

The second letter, dated August 16, 2007 bore the title "REVISED ENGAGEMENT LETTER" and recited the following in relevant part:

> Dear Fred:

---

[3]Presumably, a typo. The filing fee was $299.00.

> This letter will revise and supplement our engagement letter entered into on June 7, 2007.
>
> We spoke of a cost of approximately $3,500.00. However, sifting through your files and addressing the outstanding liabilities has involved substantial time. I hired Ronald J. Weiss, Esquire, who you met several weeks ago as we started the project, to consult. He has been compensated thus far in the amount of $1,500.00. I have drawn $1,500 from the advance made by you, plus $299.00 to cover filing fees leaving an unexpended balance of $201. in our client trust fund.
>
> Based on time, and the anticipated involvement with the case, including possible issues involved with the transfer of 321 Electric Avenue, Lunenburg, we anticipated that the total cost of representing you in connection with your Chapter 7 petition, will require an additional $3,000.00. Our fee will be a fixed fee of $6,500. which includes the filing fee, travel expense, if any, and will be sufficient to conclude the case, including the section 341 meeting and the preparation of your testimony for that meeting, as well as removal of liens covering your residence.
>
> You have paid $3,500.00 on account. We will require an additional and final payment of $3,000.00. We plan to file the petition on August 24th by electronic ECF/CM. The case will be filed in the western district [sic] and handled in Worcester.

A review of the time entries by Attorney Curhan's office and Attorney Weiss' office reflects that all of the time listed - 46.8 total hours of attorney time and 27.5 hours of paralegal time - was spent on preparation of the petition and associated papers and conferences by and between the attorneys and paralegal (as well as relatively short conferences with the Debtor). As far as the "removal of liens" described in the August 16th letter, no § 522(f) motions have been filed, nor do the time entries reveal any communications with lien creditors seeking voluntary discharge of any encumbrances. On the other hand, the time entries do reflect 3.5 hours of paralegal time, charged to the client's account, for training on the court's CM/ECF system.

5

## II. DISCUSSION

The standards employed in this Circuit for the reasonableness of compensation are well-settled.

> In this Circuit, the methodology employed to evaluate the reasonableness of compensation for professionals is the "lodestar" approach. See Boston and Maine Corp. v. Moore, 776 F.2d 2, 6-7 (1st Cir. 1985); Furtado v. Bishop, 635 F.2d 915, 920 (1st Cir. 1980); Garb v. Marshall (In re Narragansett Clothing Co.), 210 B.R. 493, 497 (1st Cir. BAP 1997); In re Bank of New England Corp., 142 B.R. 584, 586 (Bankr. D. Mass. 1992); In re Act Manufacturing, 281 B.R. 468, 479 (D. Mass. 2002); In re Anolik, 207 B.R. 34, n.11 (Bankr. D. Mass. 1997); In re 1095 Commonwealth Ave. Corp., 204 B.R. 284, 290 (Bankr. D. Mass. 1997); In re Smuggler's Beach Properties, Inc., 149 B.R. 740, 743 (Bankr. D. Mass. 1993); In re First Software Corp., 79 B.R. 108, 112-13 (Bankr. D. Mass. 1987); In re WHET, Inc., 58 B.R. 278, 285 (Bankr. D. Mass. 1986). Courts first develop a point of reference by determining a reasonable billing rate and then multiplying it by the number of hours which appropriate tasks should have consumed. Narragansett Clothing Company, 210 B.R. at 497.
>
> The lodestar rate ought to take into account the type of work performed, who performed it, the expertise that it required, and when it was undertaken. Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950-51 (1st Cir. 1984). The court must "consider prevailing market rates in determining the lodestar, based on usual and customary rates in the jurisdiction . . . . No presumption exists that a professional is entitled to the amount he or she requests." Narragansett Clothing Company, 210 B.R. at 498-99. Once determined, the applicable rate is multiplied by the hours reported, after those which are duplicative, unproductive, excessive, or otherwise unnecessary are subtracted. Grendel's Den, Inc. v. Larkin, 749 F.2d at 950.
>
> Finally, the lodestar is adjusted by various factors, including: (1) the time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time pressures imposed by the client or the circumstances; (8) the amount involved and results obtained as a result of the attorney's services; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and

> (12) awards in similar cases. <u>Smuggler's Beach Properties, Inc.</u>, 149 B.R. at 743; <u>In re First Software Corporation</u> at 112.
>
> <u>Anolik</u>, 207 B.R. at n.11.
>
> > The Court has an independent judicial responsibility to review the fees of professionals, even in the absence of an objection by a party in interest. <u>In re First Software Corporation</u>, 149 B.R. at 111. The burden of proof is on the party requesting a compensation award. <u>Narragansett Clothing Company</u> 210 B.R. at 498.

<u>In re Lafrance</u>, 311 B.R. 1, 20-21 (Bankr. D. Mass. 2003).

Still, notwithstanding the standards set forth above, judges should exercise special care in characterizing the services of an attorney as excessive or unnecessary. Judges are often poorly positioned and insufficiently informed to permit a conclusion that what was done for a client was not required in order to protect the client's interests.

No such nuancing, however, clouds this Court's determination here. A six thousand dollar ($6,000.00) fee, even for seventy-five (75) combined hours of attorney and paralegal time, is not appropriate for the preparation of the schedules for a no-asset case with few creditors - absent an explanation demonstrating extraordinary circumstances. Nor is it necessary, absent such circumstances, to bring in another law firm to "consult." Nor is it *ever* appropriate to charge a client for the training of a paralegal to learn the court's electronic filing system.

The burden to show extraordinary circumstances was on Attorney Curhan. He failed to meet that burden. From the outset, Attorney Curhan intended to retain Attorney Ronald Weiss for his "expertise." But expertise in what? In preparing bankruptcy schedules? Apparently, Attorney Curhan believed, at the beginning of his representation of the Debtor, that his skills and experience were not sufficient to serve his client's needs without help.

Indeed, Attorney Curhan's comments during the October 16, 2007 hearing on the Show Cause Order were particularly telling. He explained that his experience in bankruptcy matters had previously been primarily representing commercial interests and secured creditors. He conceded that he was now "semi-retired" and that, with respect to individual debtor cases, he "didn't get into the intricacies of the new law[4] and thus hired Fred Weiss . . . to assist [him] in connection with the changes in the law." He further noted that he required assistance in connection with the "means test" and that Attorney Weiss had the software required to produce the schedules. He further lamented that the affairs of the Debtor's former company and the Debtor's guaranties of the company obligations were complex and that he had been instrumental in assisting the Debtor with those matters.

Regrettably, Attorney Curhan's explanation fell far short of what was necessary to justify his fee. First, although it might be commendable that Attorney Curhan sought assistance to ensure that the Debtor was well-represented in light of the gaps in Attorney Curhan's skill set,[5] having the Debtor pay for two sets of attorneys - when one qualified attorney would do - was not justified or justifiable. Second, the tales of Attorney Curhan's service to the Debtor and/or his company with respect to the company's demise were not reflected in the time entries of the Response. These tasks were likely accomplished long before contemplation of this case.

---

[4] Presumably, Attorney Curhan was referring to the October 17, 2005 amendments to the Bankruptcy Code.

[5] Referral to another more experienced attorney would have been even more commendable.

The purpose of § 329 is to permit a court to determine the reasonableness of the fees of counsel to a debtor for services rendered in contemplation of or in connection with a bankrupcy case. The fees charged by Attorney Curhan were clearly excessive under the circumstances. One possible solution would be to reduce the fee to the amount of the original agreement - $3,000.00. The Court does not, however, need to make that determination. Attorney Curhan's failure to disclose his arrangement with Attorney Weiss precludes his receiving *any* compensation from this representation.

In conjunction with the filing of the petition and schedules, Attorney Curhan filed his Disclosure of Compensation of Attorney for Debtor (the "Disclosure"). In paragraph 1 of the Disclosure, Attorney Curhan reported that he had agreed to accept $6,000 in payment for legal services in contemplation of or in connection with the case, that he had received that sum and that no balance was due.[6] However, in paragraph 4 of the Disclosure, he also checked the following statement: "I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm." That statement, made by Attorney Curhan, when he signed the Disclosure on August 29, 2007, was patently untrue. At all relevant times, Attorney Curhan intended to share the payments from the Debtor with Attorney Ronald Weiss. That intention can not be disputed.

---

[6] Actually, Attorney Curhan agreed to accept and did in fact receive $6,500.00, of which $500 was to be allocated to the filing fee and undetermined expenses - not $6,000.00. The better practice would have been to disclose all of the funds received and, if applicable, to disclose any allocation between payment for services rendered and reimbursement of out of pocket expenses. However, in light of this Court's finding below that Attorney Curhan failed to make a far more material disclosure in Paragraph 4 of the Disclosure Statement, it is not necessary to quibble about this $500.00 difference.

9

It appears in both of Attorney Curhan's letters, dated June 7, 2007 and August 16, 2007, to the Debtor.

Accurate disclosure to the court by attorneys of material facts relating to their fee arrangements with debtors is no less important than disclosure to the court by debtors of material facts with respect to their financial affairs.  The importance of that disclosure is at the heart of § 329 and Rule 2016.  Where an attorney fails to accurately disclose material elements of his or her fee arrangement in the Disclosure required by Fed.R. Bankr.P. 2016, that omission has consequences.  And courts have not been timid about choosing the forfeiture of all fees received by the debtor's counsel as such a consequence - even when the omission was the result of negligence or inadvertence.[7]  <u>Kisseberth v.  Kisseberth (In re Kisseberth)</u>, 273 F.3d 714, 720-22 (6th Cir. 2001); <u>In re Park-Helena Corp.</u>, 63 F.3d 877, 882 (9th Cir. 1995); <u>In re Berg</u>, 356 B.R. 378, 383-84 (Bankr. E.D. Pa. 2006).  Under all of the circumstances here, forfeiture of all compensation is the most appropriate sanction.

III.    CONCLUSION

For the reasons set forth above, compensation and reimbursement of expenses allowable to Attorney Curhan will be limited to the amount of $299.00, the Debtor's filing fee.  Attorney Curhan will be ordered to reimburse jointly to the Debtor and his non-debtor spouse, Cindy Laberge, the sum of $6,201.00, within 30 days of the entry of this Court's

---

[7] Thie omission in the Disclosure was not raised or discussed at the October 16th hearing.  Nonetheless, the omission is plain in the papers and case law does not permit negligence or  inadvertence, even if here present, as an excuse.  If there appear to Attorney Curhan facts other than negligence or inadvertence which, in his view, would justify the omission, he is invited to timely seek reconsideration under Fed. R. Bankr. P.  9023.

accompanying order and to file within seven (7) days thereafter a certificate of compliance to which Attorney Curhan will attach a copy of the remittance check.[8]

A separate Order in conformity with this Memorandum of Decision shall issue forthwith.

DATED:   January 4, 2008                    By the Court,

*[signature]*

Henry J. Boroff
United States Bankruptcy Judge

---

[8] Disgorgement should be made jointly to the Debtor and Cindy Laberge as the Disclosure Statement reflects both as the source of the payments. Further, nothing herein is intended to determine whether Attorney Ronald Weiss has a legal obligation to contribute to the payment of this disgorgement order. If Attorneys Curhan and Weiss can not agree on that question, they should take it to a nonbankruptcy forum for resolution, as it would not impact the Debtor or the bankruptcy estate.